## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHANE OTERO,

      Plaintiff,

v.                                   Case No. 8:10-CV-1859-T-27TGW

CHRISTOPHER INDICO, et al.,

      Defendants.

_____/

## ORDER

Before the Court are Defendant, Christopher Indico's Motion for Summary Judgment and Memorandum in Support (Dkt. 24), Defendant Indico's affidavits in support of his Motion for Summary Judgment (Dkt. 25), Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. 26), and Plaintiff's exhibits in support of his response (Dkt. 27). Upon consideration, Defendant's Motion for Summary Judgment (Dkt. 24) is due to be granted.

### Introduction

Plaintiff commenced this action against Deputy Christopher Indico, Sarasota County, Florida, and Tom Knight, Sheriff of Sarasota County, pursuant to 42 U.S.C. § 1983 alleging excessive force in the course of an arrest in violation of the Fourth Amendment to the United States Constitution. Specifically, Plaintiff alleges that after attempting to evade arrest by fleeing from deputies, he surrendered and was on the ground with his hands raised over his head when Deputy Indico commanded his K-9 to attack Plaintiff. The K-9 bit Plaintiff's leg causing two lacerations.

The Court dismissed the claims against both the Sheriff and Sarasota County for failure to state a claim upon which relief can be granted (Dkt. 5). Subsequently, the Court granted Deputy Indico's motion to dismiss Plaintiff's claim against him in his official capacity (Dkt. 16). Therefore, this action proceeded solely on Plaintiff's use of excessive force claim against Deputy Indico in his individual capacity (Id.).

Deputy Indico argues that he is entitled to judgment as a matter of law on the basis that he is entitled to qualified immunity. Specifically, he argues that he is entitled to qualified immunity because: (1) he was acting under his discretionary authority; (2) there was no constitutional violation since, under the circumstances, use of the K-9 was objectively reasonable; and (3) even if he violated Plaintiff's constitutional rights, the rights were not clearly established. In response, Plaintiff argues that genuine issues of material fact preclude summary judgment in favor of Deputy Indico, and that Deputy Indico is not entitled to qualified immunity.

**Factual Background**

On August 18, 2008, Plaintiff had an outstanding felony warrant for his arrest due to a petit theft and failure to appear in court (Dkt. 1 at 4). On that date, at approximately 2:10 a.m., Deputy Henderson responded to a call regarding a suspicious person (Dkt. 25-1 at 2). The person who had made the call informed dispatch that the suspicious person was Plaintiff, and that Plaintiff had a warrant for his arrest (Id.). Deputy Henderson saw on his dispatch screen that there was an active warrant for Plaintiff's arrest (Id.). The caller informed dispatch that Plaintiff was wearing a white shirt and white shorts (Id.). Deputy Henderson saw Plaintiff walking and wearing white shorts with a white shirt draped over his shoulder (Id.).

Deputy Henderson approached Plaintiff and asked him for identification (Id.). Plaintiff

responded that he did not have identification, and stated that his name was Dave Armstrong (Id.). Deputy Henderson returned to his patrol vehicle and saw Plaintiff's drivers license picture on his computer screen (Id.). As Deputy Henderson exited his vehicle, Plaintiff fled down the road and into the woods (Id.).

Deputy Henderson pursued Plaintiff on foot (Id.). Plaintiff slid down into a canal and began to swim (Id.). Deputy Henderson ran along the bank of the canal (Id.). Plaintiff got out of the canal and hid in some bushes (Id.). Deputy Henderson repeatedly ordered Plaintiff to lie on his stomach and put his hands behind his back (Id.). Plaintiff failed to comply with the orders and kept his arms in front of him (Id.). After Deputy Henderson pointed his taser at Plaintiff, Plaintiff put his right arm behind his back (Id.). After several more orders, Plaintiff put his left arm behind his back as well (Id.). When Deputy Henderson holstered his taser and attempted to handcuff Plaintiff, Plaintiff rolled down the bank and jumped back into the canal (Id.).

Plaintiff crossed the canal and climbed up the bank on the opposite side (Id.). Deputy Henderson advised responding officers of Plaintiff's direction of travel (Id.). Deputy Henderson then entered the canal and crossed to the opposite side (Id.). Plaintiff did not comply with Deputy Henderson's order to stop (Id.). Instead, he continued to flee and climbed over a fence (Id.). Deputy Henderson lost sight of Plaintiff (Id.). He did, however, see Plaintiff's wet footprints across a road and a driveway off the road (Id.). Plaintiff was "hiding." (Dkt. 1 at 5).

Deputy Indico arrived at the scene with his K-9 on a leash (Dkt. 25-2 at 1-2). Plaintiff looked over a fence and saw a group of deputies and a K-9 approaching him (Dkt. 1 at 5). Plaintiff "announced his location" to the officers (Id.). The K-9 located Plaintiff in some bushes at the corner

of the fence and a house (Dkt. 25-2 at 2).[1] Plaintiff yelled out that "he was surrendered on the ground with his hands in the air." (Dkt. 1 at 5). Deputy Indico did not hear Plaintiff say anything (Dkt. 25-2 at 2). The K-9 went up to Plaintiff and did not exhibit any aggression (Dkt. 1 at 5). Deputy Indico could not see Plaintiff's hands in the darkness, and did not know if Plaintiff was armed (Dkt. 25-2 at 2). Deputy Indico gave verbal commands to Plaintiff to come out from the bushes and show him his hands, or he would send the K-9 in after him (Id.). Plaintiff did not hear Deputy Indico's commands (Dkt. 1 at 5). Because Plaintiff did not respond to Deputy Indico's orders, Deputy Indico deployed the K-9 to apprehend Plaintiff (Dkt. 25-2 at 2). The K-9 bit Plaintiff on his right leg, and moved him out of the bushes (Id.). Deputy Indico commanded the K-9 to release Plaintiff, and the

---

[1] In his response to the motion for summary judgment, Plaintiff asserts that the issue of whether he was hiding in bushes is disputed (Dkt. 26 at 4). In support of this assertion, Plaintiff argues that his complaint alleges that he was visibly seen by an officer who was behind him, and that he "was hiding himself next to the resident's home with his hands in the air." (Id.). He further argues that "in the complaint it is stated plainly that Plaintiff is on the ground, hands in the air with a deputy behind him, while visibly seen as such, not hidden in some bush(es) as Defendant alleges." (Id.). Despite his assertions, the complaint does not allege that Plaintiff was not hiding in the bushes (Dkt. 1 at 4-5). Nor does the complaint allege that Plaintiff "was hiding himself next to the resident's home with his hands in the air." (Id.). Instead, the complaint alleges that as the officers and the K-9 were approaching Plaintiff, he "was hiding himself." (Id. at 5). Moreover, the complaint does not allege that the officer behind Plaintiff saw Plaintiff on the ground with his hands in the air (Id.). Rather, the complaint alleges that Plaintiff had yelled out to the officers that he was on the ground with his hands in the air, and that the officer he saw behind him never attempted to handcuff him (Id.). More importantly, even if that officer did see Plaintiff on the ground with his hands in the air, the complaint does not allege or in any way suggest that Deputy Indico saw Plaintiff on the ground with his hands in the air. Finally, the complaint's vague and self-serving statement that "Plaintiff was not a threat and was visably [sic] seen not to be such. . ." does not in any way refute Deputy Indico's sworn statement that Plaintiff was hiding in the bushes, and that he could not see Plaintiff's hands.

To the extent Plaintiff appears to be alleging for the first time in his response that he was not hiding in bushes when the K-9 was deployed, the Court will not consider this assertion in ruling on Deputy Indico's motion for summary judgment, because the response is not signed under penalty of perjury (see Dkt. 26). "Rule 56 of the Federal Rules of Civil Procedure requires that the party opposing a properly supported motion for summary judgment to submit sworn affidavits or statements signed under penalty of perjury in opposition to a summary judgment motion." *Hunt v. Bullard*, 1998 U.S. Dist. LEXIS 19966, *5 (S.D. Ala. Sept. 8, 1998) (citing 28 U.S.C. § 1746; *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties, Ala.*, 941 F.2d 1428, 1444 n.36 (11th Cir. 1991). Therefore, in sum, Plaintiff has not provided any evidence to refute Deputy Indico's sworn statement that Plaintiff was hiding in bushes, and that he could not see Plaintiff's hands when he deployed the K-9 to apprehend Plaintiff.

K-9 obeyed the command by letting go of Plaintiff's leg (Id.).

Deputy Henderson handcuffed Plaintiff (Id.).   Plaintiff was taken to the hospital for examination and treatment of the bite wounds on his leg (Id.).  Plaintiff sustained two large, deep wounds to his right calf/lower leg (Dkt. 27 at 2).  Medical personnel cleaned the wounds, and closed them with multiple stitches (Id. at 5).  Plaintiff was discharged from the hospital that same morning (Id. at 6).

## Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.  All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986).

The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to "deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

## DISCUSSION

**Qualified Immunity**

Deputy Indico contends summary judgment is proper because he is entitled to qualified immunity on Plaintiff's § 1983 claim. The defense of qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *Hope v. Pelzer*, 122 S.Ct. 2508, 2515 (2002)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002)).

To determine the applicability of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295 (11th Cir. 2000) (citations omitted). Importantly, the official's subjective intent is irrelevant to the inquiry. *Id.* The Supreme Court has established a two-part test to determine the applicability of qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir.2003). First, the Court must determine whether the Plaintiff has alleged the deprivation of a constitutional right. *Id.* The second step in the analysis is to determine whether Plaintiff's right was "clearly established" at the time the

alleged violation occurred. *Id.*

It is undisputed that Deputy Indico was acting within the scope of his discretionary authority when he apprehended Plaintiff. Accordingly, it must be determined whether the facts, when viewed in the light most favorable to Plaintiff, establish that Deputy Indico committed a constitutional violation and if so, whether Plaintiff's constitutional right was "clearly established" at the time of the violation. *See Trammell v. Thomason*, 335 Fed. Appx. 835 (11th Cir. 2009) (unpublished).

**A. Violation of a Constitutional Right**

Plaintiff contends Deputy Indico violated his constitutional rights by using excessive force when he deployed the K-9 during the events that took place on August 18, 2008. The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To assert a violation of the Fourth Amendment for the use of excessive force, Plaintiff must demonstrate that (1) a seizure occurred and (2) the force used to effect the seizure was unreasonable. *Troupe v. Sarasota County, FL*, 419 F.3d 1160, 1166 (11th Cir. 2005).

Determining whether the force used was reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985); *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir. 1999). Therefore, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting *Graham*, 490 U.S. at 396). "A constitutional violation occurs when the officer's use of force is 'objectively unreasonable' in light of the totality of the circumstances at the time the

force is used." *Graham*, 490 U.S. at 396.

Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case," including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. In addressing these three factors, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

Based on the facts viewed in the light most favorable to Plaintiff, Deputy Indico's actions did not constitute a violation of Plaintiff's Fourth Amendment right to be free from excessive force. It is undisputed that: 1) Plaintiff had an outstanding warrant for his arrest, and that he gave false information to and fled from Deputy Henderson after Deputy Henderson had stopped him; 2) after Deputy Henderson initially caught Plaintiff and tried to handcuff him, Plaintiff again fled from Deputy Henderson; 3) Deputy Henderson called for backup and informed Deputy Indico that he was pursing the Plaintiff on foot; 4) when Deputy Indico arrived at the scene with the K-9, it was approximately 2:00 a.m., and Plaintiff was hiding in bushes; 5) Deputy Indico could not see Plaintiff's hands, and did not know if Plaintiff was armed; 6) prior to deploying the K-9 on Plaintiff, Deputy Indico gave verbal commands to Plaintiff to come out of the bushes, and warned him that

he would send the K-9 in after him if he did not comply;[2] 7) Plaintiff did not come out of the bushes;[3] and 8) the K-9 was then deployed, bit Plaintiff on the right leg and moved him out of the bushes, Deputy Indico immediately commanded the K-9 to release Plaintiff, and the K-9 complied with the command.

Given these facts, it was not objectively unreasonable for Deputy Indico to deploy the K-9 in order to locate Plaintiff, and in order to get Plaintiff out from where he was hiding. Moreover, even if Deputy Indico did not provide Plaintiff with any kind of warning prior to deploying the K-9, this fact alone does not constitute a constitutional violation. *See Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1330-36 (M.D. Fla. 2007). It is also not a constitutional violation to use a dog, trained to bite and hold, to track a suspect. *Id.*

The record also reflects that it is undisputed that as soon as the K-9 bit onto Plaintiff's leg and pulled Plaintiff out of the bushes, Deputy Indico instructed the K-9 to release Plaintiff. These facts are distinguishable from those in *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000). There, qualified immunity was denied where an officer let the K-9 attack the suspect for two

---

[2]Plaintiff's allegation in his complaint that he "heard not one of the officer's [sic] present issue a verbal instruction to comply or warning" (Dkt. 1 at 5) does not refute Deputy Indico's sworn statement that he gave the verbal order and warning prior to deploying the K-9. Nor does the allegation show that Deputy Indico knew that Plaintiff could not or did not hear the order. Plaintiff has not presented evidence sufficient to raise a genuine issue of material fact concerning whether Deputy Indico ever actually ordered Plaintiff to come out from the bushes before deploying the K-9. *See Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1334 (M.D. Fla. 2007) ("not hearing a warning does not establish that one was not given nor, under the circumstances, raise a genuine issue of material fact.").

[3]Taking as true that Plaintiff yelled out to the officers that he was surrendering and on the ground with his hands in the air, and presuming that Deputy Indico heard what Plaintiff yelled, Deputy Indico was not required to accept the sincerity of Plaintiff's statement while Plaintiff remained hidden in the bushes in the dark. *See Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009) (even though suspect had shouted out his location in an attempt to surrender, and even assuming that the suspect was legitimately attempting to surrender, "it was objectively reasonable for [officer] to question the sincerity of [suspect's] attempt to do so and use the canine to apprehend him. [Officer] was not required to risk his own life by revealing his position in an unfamiliar wooded area at night to an armed fugitive who, up to that point, had shown anything but an intention of surrendering.").

minutes even though it was clear that the suspect did not pose a threat of bodily injury to the officer and the suspect was not attempting to flee or resist arrest. In the instant case, there is no indication that Deputy Indico's use of the K-9 was malicious or involved greater force than was necessary. *See Crenshaw v. Lister*, 556 F.3d 1293.

These facts are similar to *Grimes v. Yoos*, 298 Fed. Appx. 916 (11th Cir. 2008) (unpublished). In *Grimes*, the Eleventh Circuit affirmed the district court's grant of summary judgment based on qualified immunity, noting:

> The record demonstrates that the district court did not err in granting the defendants' cross motion for summary judgment on the excessive force claim. Specifically, the record demonstrates that Yoos's use of canine force was objectively reasonable. From Sinnott's and Yoos's police reports, it appears that the defendants had reason to believe that the serious felony crime of burglary had recently occurred, as Sinnott stated that she found a freshly broken window upon arriving at the building and Yoos stated that his police dog alerted to fresh human scent in the building.
>
> Also, from Sinnott's and Yoos's police reports, it appears that the defendants had reason to believe that the perpetrator was in the area of vegetation near the building, as Sinnott stated that she heard movement there and Sinnott and Yoos stated that they both saw an empty cash drawer in that area. Furthermore, from Sinnott's police report and the defendants' affidavits, it appears that the defendants had reason to believe that Grimes may pose a risk to their safety, as Sinnott stated that the vegetation was thick and the visibility low, such that they could not see who was in the bushes and whether he or she was armed, and the defendants each attested that they were concerned for their safety.
>
> Finally, from Sinnott's police report, it appears that the defendants had reason to believe that Grimes was trying to flee, as Sinnott stated that she could hear movement in the vegetation and that a chain link fence nearby was bent, suggesting that someone had bent it in an effort to clear it. Therefore, the record demonstrates that the defendants could have reasonably believed that force was necessary because an unknown number of felony suspects were in a concealed area and were attempting to evade police apprehension.
>
> The fact that Yoos failed to warn Grimes of his and the police dog's presence does not alter the conclusion that the use of force was objectively reasonable.

*Id.* at 923 (internal citations omitted).

In conclusion, this Court must be mindful of *Graham*'s explicit recognition of, and allowance for, a measure of deference to police judgment given the "tense, uncertain and rapidly evolving" circumstances that police often confront. 490 U.S. at 396-97 ("[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation").[4] Plaintiff's after-the-fact arguments, including that he was not armed, and that he did not pose any kind of threat to the officers are simply not relevant. Accordingly, in light of the totality of the circumstances, Deputy Indico' actions did not constitute excessive force and did not violate Plaintiff's Fourth Amendment rights.

## B. Whether Plaintiff's Constitutional Rights Were Clearly Established

Even assuming that Deputy Indico's conduct was not objectively reasonable, such that it arguably violated Plaintiff's constitutional right against the use of excessive force, Plaintiff's constitutional right against the type of force used in the instant case was not clearly established.

In determining whether a constitutional right is clearly established, the prominent question is whether the state of the law at the time of the incident gave officials fair warning that their behavior was unlawful. *Hope v. Pelzer*, 536 U.S. at 741. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that

---

[4]The Eleventh Circuit has held that a court should not "view the matter as judges from the comfort and safety of [ ] chambers, fearful of nothing more threatening than the occasional paper cut ... [Rather, the Court must] see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Mongeau v. Jacksonville Sheriff's Office*, 197 Fed.Appx. 847, 850 (11th Cir. 2006) (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1333-34 (11th Cir. 2004)).

what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id*. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (quoting *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986)). An official is entitled to qualified immunity "unless their 'supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Id*. (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002)).

In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir. 1997)).

Therefore, in order to show that Deputy Indico is not entitled to qualified immunity, Plaintiff must be able to point to earlier case law from the Eleventh Circuit, the Florida Supreme Court, or from the United States Supreme Court that is "materially similar ... and therefore provided clear notice of the violation" or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances" and established clearly the unlawfulness of Deputy Indico's conduct. *Long*, 508 F.3d at 584.

Plaintiff has not provided, and independent research does not reveal, a statute or

constitutional provision or specific case barring the type of force used in the instant case. Also, Deputy Indico's conduct was not so egregious as to be clearly impermissible. As set forth above, *Priester* is distinguishable because the plaintiff in that case immediately surrendered to the police officers and was attacked by the police dog for approximately two minutes, while in the instant case Plaintiff fled from the police, was hiding from the deputies when the K-9 arrived, did not comply with the order to come out of the bushes, and Deputy Indico immediately commanded the K-9 to release Plaintiff after the K-9 removed Plaintiff from the bushes.

Consequently, Deputy Indico is entitled to qualified immunity, and his Motion for Summary Judgment must be granted.

ACCORDINGLY, the Court **ORDERS** that Defendant, Christopher Indico's Motion for Summary Judgment and Memorandum in Support (Dkt. 24) is **GRANTED**. The **Clerk of the Court** is directed to enter judgment in favor of Defendant Christopher Indico and to close the case.

**DONE and ORDERED** in Tampa, Florida, on *September 28th*, 2012.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc
<u>Copy furnished to</u>:
Plaintiff *pro se*
Counsel of Record

13